F I L E D
 Clerk
 District Court
FEB 02 2026
for the Northern Mariana Islands
By_____ JP _____
            (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ZAJI O. ZAJRADHARA,<br><br>         Plaintiff,<br><br>    v.<br><br>SCOTT TURNER, in his official capacity; KEVIN COOKE, in his official capacity; REBECCA BORJA, in her official capacity; CLAUDETTE FERNANDEZ, in her official capacity; and DOES 1-10, in their official or individual capacities as HUD or NMHC employees,<br><br>         Defendants. | Case No. 1:25-cv-00004<br><br>**SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

    Before the Court is Plaintiff Zaji O. Zajradhara's *pro se* complaint for damages and injunctive relief asserting *Bivens* claims for alleged violations of his First Amendment and Fifth Amendment rights,[1] and alleging that a Commonwealth of the Northern Mariana Islands ("CNMI") House Resolution serves as an unconstitutional bill of attainder. (Compl., ECF No. 2.) Zajradhara brings these claims against four employees of the United States Department of Housing and Urban

---

[1] Significant sections of the complaint also discuss the Fourteenth Amendment. (*See* Compl. 7–11, ECF No. 2.) However, that discussion arises in the context of Zajradhara's characterization that the Commonwealth of the Northern Mariana Islands ("CNMI") is excluded from the Fourteenth Amendment's Equal Protection Clause (*see id.*), and accordingly, Zajradhara has not asserted any legal claims under the Fourteenth Amendment (*see id.* at 1–2, 16–18). Thus, the Court will not address any Fourteenth Amendment claims in this screening order.

Development ("HUD")—Scott Turner, in his official capacity as Secretary of HUD, Kevin Cooke, in his official capacity as General Deputy Assistant Secretary for Fair Housing and Equal Opportunity ("FHEO") and Senior Community Planning and Development ("CPD") Representative, Rebecca Borja, in her official capacity as Senior CPD Representative, and Claudette Fernandez, in her official capacity as General Deputy Assistant Secretary for CPD. (*Id.* at 1–3.) The complaint also names ten Doe Defendants, "[s]ued in their official or individual capacities as HUD or [Northern Marianas Housing Corporation ("NMHC")] employees[.]" (*Id.*) Zajradhara claims to be indigent and seeks to proceed *in forma pauperis*, asking this Court to waive the filing fees and payment of litigation costs. (*Id.*; ECF No. 1.) The Court granted Zajradhara's application to proceed *in forma pauperis* on July 17, 2025 and took the screening of his complaint under submission. (ECF No. 3.)

For the following reasons, the Court now DISMISSES Zajradhara's complaint without prejudice, and grants him leave to amend his complaint consistent with the provisions of this order.

I.  BACKGROUND

The factual basis for Zajradhara's *Bivens* claims is alleged "persistent discrimination by HUD officials and NMHC, including exclusion from employment, denial of Community Development Block Grant [("CDBG")] funding, and retaliation for exposing corruption and advocating for equitable resource access . . . ."[2] (*Id.* at 1.) With respect to employment discrimination, Zajradhara alleges that

---

[2] The complaint provides information about numerous Memoranda of Understanding ("MOUs") and agreements between federal agencies and the CNMI. (*See id.* at 4–7.) Zajradhara explains that "[t]hese MOUs and agreements are central to understanding the scope of HUD's obligations and the failures of its officials to uphold constitutional and statutory mandates." (*Id.* at 2.) However, because Zajradhara has not alleged that he has any enforceable legal right with respect to the agreements, the Court will only consider information about the agreements as part of the factual background for Zajradhara's claims.

2

he was discriminatorily denied employment "despite [his] exemplary qualifications" for three positions between 2023 to 2024. (*Id.* at 3–4.) As evidence of "discriminatory animus[,]" Zajradhara alleges that during an interview for one position on May 17, 2024, "an NMHC employee who had previously used racial slurs against Plaintiff in a social setting was present . . . ." (*Id.* at 4.) With respect to the denial of his applications for CDBG funding, Zajradhara alleges that he "submitted four CDBG funding proposals in 2025, encountering delays and excuses." (*Id.*) After requesting "an audit of NMHC and HUD-Hawaii practices from Rebecca Borja" on February 25, 2025, Zajradhara alleges that "[h]e received dismissive remarks about his English proficiency rather than a substantive response." (*Id.*) As to both the employment and funding denials, Zajradhara alleges that the "denials intensified" after he engaged in protected First Amendment activities—namely, by raising nepotism concerns on April 8, 2023, "filing a Fair Housing complaint (January 22, 2021), submitting public comments (e.g., Regulations.gov, May 3, 2025), and requesting audits . . . ." (*Id.*)

Zajradhara's bill of attainder claim is premised upon the CNMI legislature's alleged adoption of House Resolution ("HR") 21-5, which declared "Zaji O. Zajradhara, formerly known as Steven Carl Farmer, a persona non grata in the Commonwealth of the Northern Mariana Islands." (*Id.* at 12.) The complaint alleges that, "[t]hough styled as a resolution, HR 21-5 carries the force of law by directing administrative actions—transmitted to the Governor, Attorney General, and Bureau of Immigration––that exclude Plaintiff from employment, funding, and residency rights." (*Id.*) Zajradhara alleges that the CNMI legislature passed HR 21-5 in retaliation for his whistleblowing regarding "corruption in HUD's CDBG programs, CW-1 visa fraud, ARPA/CARES ACT and mismanagement of disaster relief funds post-Typhoon Yutu." (*Id.* at 13.) Lastly, Zajradhara alleges that HR 21-5 "triggered

3

administrative actions: NMHC barred him from employment, and HUD-funded programs rejected his applications." (*Id.* at 12–13.)

Zajradhara seeks relief in the form of: 1) declaratory relief that HR 21-5 is void as a bill of attainder; 2) injunctive relief permanently enjoining the enforcement of HR 21-5; 3) expungement of related records; 4) compensatory damages of $2,400,000; 5) punitive damages on individual defendants; 6) an order of compliance monitoring; and 7) declaratory relief that future "persona non grata" designations are unconstitutional. (*Id.* at 17.)

## II.   LEGAL STANDARD

Because this is a civil action initiated by a pro se party filing *in forma pauperis*, the Court will screen the complaint to determine if the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), *overruled in part on other grounds by*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). A complaint fails to state a claim if it lacks a cognizable legal theory or does not allege enough facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). As a baseline requirement, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not include detailed allegations, but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.*

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). Even under the heightened *Twombly/Iqbal* pleading standard, the "'obligation' remains, 'where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). However, the court "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (internal citation omitted). Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" in the complaint. *Lopez*, 203 F.3d at 1130–31 (9th Cir. 2000) (internal citations omitted).

### III.　DISCUSSION

The Court must first consider whether it has jurisdiction over Zajradhara's claims. Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As discussed in greater detail below, the Court finds that it lacks jurisdiction over all of Zajradhara's claims: 1) Zajradhara fails to state *Bivens* claims against the Defendants in their official capacities because *Bivens* actions may only be brought against federal officials in their individual capacities; 2) Zajradhara fails to state *Bivens* claims against the Doe Defendants in their individual capacities because his allegations are insufficiently specific; and 3) Zajradhara's bill of attainder claim fails because it is improperly alleged under Article I, Section 9

of the United States Constitution and Zajradhara has not provided sufficient evidence that HR 21-5 was enacted into law.

**A. The complaint fails to state *Bivens* claims against the Defendants who are sued in their official capacities.**

"*Bivens* created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "In a paradigmatic *Bivens* action, a plaintiff seeks to impose personal liability upon a federal official based on alleged constitutional infringements he or she committed against the plaintiff." *Id.* (internal citations omitted). "[A] *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Id.* (quoting *Daly–Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir.1987)). "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (internal citation omitted). Here, because Zajradhara has sued all Defendants in their official capacities (Compl. 1–2 (suit against "Defendants in their professional capacities to ensure governmental accountability without imposing personal financial burdens on individual defendants")) and the United States has not waived its sovereign immunity in this case, the Court lacks jurisdiction to consider Zajradhara's *Bivens* claims against all Defendants in their official capacities.

Even if Zajradhara had properly brought his *Bivens* claims against the Defendants in their individual capacities, the Court is skeptical of the linkage between the named Defendants and the alleged violations of Zajradhara's constitutional rights set forth in the complaint. "To state a claim, Plaintiff must link each named defendant to a violation of his constitutional rights; there is no

*respondeat superior* liability under *Bivens*." *Lopez-Rangel v. Copenhaver*, No. 1:14-CV-01175 DLB PC, 2016 WL 8730721, at *3 (E.D. Cal. Jan. 29, 2016) (citing *Starr v. Baca*, 652 F.3d 1202, 1205–08 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012); *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010)). Here, Zajradhara has failed to allege any specific facts against each of the named Defendants. The complaint alleges that the named Defendants "personally contributed to [constitutional] violations by failing to investigate or remedy known discriminatory practices, despite their supervisory roles and legal obligations," but has not offered any specific facts establishing that the named Defendants indeed knew about Zajradhara's alleged whistleblowing activity,[3] his applications for employment and funding, or the ultimate denials of his applications.[4] "Legal conclusions, without factual support, are insufficient to state a claim." *Id.*

---

[3] Zajradhara only alleges specific facts with respect to Defendant Rebecca Borja's knowledge of alleged whistleblowing activity—namely, that Zajradhara had "requested an audit for NMHC and HUD-Hawaii practices from Rebecca Borja" and "received dismissive remarks about his English proficiency rather than a substantive response." (Compl. 4.) Notwithstanding these allegations, the Court is concerned about the lack of evidence regarding Defendant Borja's knowledge of Zajradhara's employment and funding applications, and the ultimate denials of those applications.

[4] Zajradhara also appears to rely on the CNMI Legislature's alleged adoption of HR 21-5 to support his *Bivens* claims against the named Defendants—federal employees. (*See* Compl. 12.) The complaint alleges that, "[t]hough styled as a resolution, HR 21-5 carries the force of law by directing administrative actions—transmitted to the Governor, Attorney General, and Bureau of Immigration—that exclude Plaintiff from employment, funding, and residency rights." (*Id.*) Again, the Court fails to see how HR 21-5—a CNMI House Resolution—is linked to the federal Defendants named in this case. Further, as the Court has expressed on prior occasion in another action brought by Zajradhara, the Court is skeptical of Zajradhara's legal conclusion that HR 21-5, a House Resolution and not a public law based on its own title, "carries the force of law." *See* N. Mar. I. Const. art. II, § 5(c) ("The legislature may not enact a law except by bill and no bill may be enacted without the approval of at least a majority of the votes cast in each house of legislature.") (*Atalig* SAC Scr. Order 12–14, ECF No. 15 *in* 1:22-cv-00014.) To the extent Zajradhara wishes to rely on HR 21-5 to support his first amended complaint, he is directed to file a copy of the Resolution that shows its passage into a public law.

Accordingly, Zajradhara's *Bivens* claims against all Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE, with leave to amend consistent with the provisions of and concerns raised in this order.

**B. The complaint fails to state *Bivens* claims against Doe Defendants one through ten in their individual capacities.**

After dismissing Zajradhara's *Bivens* claims against all Defendants in their official capacities, only Zajradhara's *Bivens* claims against Doe Defendants one through ten in their individual capacities remain. The complaint describes the Doe Defendants as "unidentified employees of HUD or NMHC who participated in the alleged unconstitutional conduct. . . . [T]hey include staff involved in program administration, complaint processing, and oversight in the CNMI and Honolulu offices." (Compl. 3.)

Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of all parties sued in an action. "As a practical matter, it is impossible for the United States Marshal to serve a summons and complaint on an anonymous defendant." *Grindling v. Cnty. of Maui Doe Prosecutors 1-10*, Civ. No. 18-00235 JMS-RLP, 2018 WL 3213605, at *2 (D. Haw. June 29, 2018). "The use of doe defendants is therefore disfavored in federal court." *Id.* (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Although a plaintiff may refer to unknown defendants as doe defendants, "he must allege facts to show how each individual doe defendant violated the plaintiff's constitutional rights." *Id.* at *3. Here, the complaint alleges that Doe Defendants one through ten "participated in the alleged unconstitutional conduct" (Compl. 3) but "fails to allege how each individual Doe [Defendant] violated [Zajradhara's] rights . . . based on any other specific conduct." *See id.* Thus, Zajradhara fails to state a claim against Doe Defendants one through ten in their individual capacities, and these claims are DISMISSED WITHOUT PREJUDICE, with leave to

amend. Zajradhara may reallege claims against the Doe Defendants in their individual capacities, but "he must allege specific facts showing what each particular Doe Defendant did to violate his rights." *See id.*

**C. The complaint fails to allege a bill of attainder claim based on HR 21-5.**

As an initial matter, Zajradhara's bill of attainder claim improperly relies upon Article I, Section 9 of the United States Constitution, which states in pertinent part that "[n]o Bill of Attainder or ex post facto Law shall be passed." Section 9 addresses acts of Congress, not state governments. *See SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) ("The Constitution instructs Congress that 'No Bill of Attainder … shall be passed.'"). Article I, Section 10 prohibits states from passing "any Bill of Attainder[.]"

Even if the Court were to construe the complaint to allege a claim under Article I, Section 10, which prohibits a state from passing any bill of attainder, Zajradhara's bill of attainder claim still fails. "[A]n impermissible bill of attainder is presented when a legislature passes a statute that inflicts a punishment on specified persons without a judicial trial." *Lewis v. Nevada*, No. 3:13-CV-00312-MMD-WGC, 2014 WL 65799, at *6 (D. Nev. Jan. 7, 2014) (emphasis omitted) (citing *SeaRiver*, 309 F.3d at 668–69). As noted *supra*, § III.A. n.4, the Court finds that Zajradhara has not provided sufficient evidence that HR 21-5, a House Resolution based on its own title, has been enacted into law by the CNMI legislature—notwithstanding Zajradhara's conclusory assertion that HR 21-5 "carries the force of law" (*see* Compl. 12). *See* N. Mar. I. Const. art. II, § 5(c) ("The legislature may not enact a law except by bill and no bill may be enacted without the approval of at least a majority of the votes cast in each house of legislature.") (*See also* Atalig SAC Scr. Order 12–14.) If Zajradhara wishes to

rely on HR 21-5 to support a bill of attainder claim properly brought under Article I, Section 10 of the United States Constitution in his first amended complaint, he is directed to file a copy of the Resolution and evidence of its passage into law.

## IV. CONCLUSION

For the foregoing reasons, Zajradhara's complaint fails to state a *Bivens* and bill of attainder claim against all Defendants, and is therefore DISMISSED WITHOUT PREJUDICE. If Zajradhara seeks to pursue any claim, he must file a first amended complaint no later than **March 4, 2026**. In his first amended complaint, Zajradhara must cure any deficiencies noted in this order and allege sufficient facts regarding each named Defendant if he seeks to establish any liability on them. Further, to the extent Zajradhara wishes to rely on HR 21-5 to support any claims, he is directed to file a copy of the Resolution along with any indicia of its passage into law with his first amended complaint. Failure to comply with the provisions of this order may result in dismissal of this case with prejudice.

IT IS SO ORDERED this 2nd day of February, 2026.

RAMONA V. MANGLONA
Chief Judge